IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| MC ASSET RECOVERY, LLC § | |
| § | |
| VS. § | CIVIL ACTION 4:07-CV-076-Y |
| § | |
| CASTEX ENERGY, INC., ET AL § | |

ORDER DENYING MOTION TO DISMISS FOR LACK OF JURISDICTION

This suit began as an adversary proceeding filed in the Mirant Corporation Chapter 11 bankruptcy. The dispute centers around a series of transactions for the purchase and transfer of certain mineral rights and closely-held stock between Mirant Corporation and some of its affiliates and Defendants in 2001 and 2002. The Court withdrew the reference of the adversary proceeding and, subsequently, Defendants filed a motion (doc. #65) to dismiss Plaintiff's third amended complaint under Federal Rule of Civil Procedure 12(b)(1) for lack of subject-matter jurisdiction.[1] In particular, Defendants' argue that Plaintiff lacks standing to bring the state-law claims alleged in its third amended complaint. After review, the Court concludes that the motion should be DENIED.

I. Factual Background

In July 2003 and on certain dates thereafter, Mirant Corporation and its affiliates (Mirant Americas Capital, LP, Mirant Americas Production Company, and Mirant Americas Development,

---

[1] Defendants' motion is actually directed at Plaintiff's second amended complaint because it was filed when that was the live pleading. Pursuant to the agreement of the parties, however, the Court will treat Defendants' motion as seeking the dismissal of Plaintiff's third amended complaint.

Inc.)(collectively hereinafter "debtors" or "Old Mirant") sought relief under Chapter 11 of the Bankruptcy Code. These cases were combined for joint administration.

Approximately two years later, Old Mirant filed a complaint against Defendants in the bankruptcy court initiating this adversary proceeding. The complaint asserted avoidance actions under 11 U.S.C. §§ 544 and 548 stemming from a series of transactions between the Old Mirant entities and Defendants involving the purchase and transfer of mineral rights and closely-held stocks in 2001 and 2002. Old Mirant contended that it received an insufficient value for the transactions and alleged a right of recovery under sections 544(b) and 548 of the bankruptcy code by seeking avoidance of the series of transactions that occurred between it and Defendants in 2001 and 2002. The adversary proceeding was stayed upon motion of Old Mirant shortly after the filing of the complaint.

A couple of months later, Old Mirant filed its *Amended and Restated Second Amended Joint Chapter 11 Plan of Reorganization for Mirant Corporation and Its Affiliated Debtors* ("the Plan"). The Plan was accompanied by the *Second Amended Disclosure Statement Relating to the Debtors' Second Amended Joint Chapter 11 Plan of Reorganization* ("the Disclosure Statement"). The Disclosure Statement disclosed that "parties-in-interest may attempt to assert claims to invalidate certain intercompany transactions . . . as

fraudulent conveyances or preferences" under section 548 of the Bankruptcy Code for the benefit of the debtors' unsecured creditors. (Defs.' App. at 144.) The Disclosure Statement further disclosed the stayed adversary proceeding brought under sections 544 and 548 of the Bankruptcy Code against Defendants and described it as a "fraudulent-transfer action" seeking "to avoid certain obligations and transfers of property" regarding the series of transactions that occurred in 2001 and 2002. (*Id.* at 216.)

Under the Plan, "all causes of action, including avoidance actions, . . . shall . . . be transferred to, and be vested in, New Mirant[2] for the benefit of the debtors and their estates." (*Id.* at 426.) The Plan defines the term "Avoidance Actions" as "all causes of action" of the bankruptcy estates that "arise under Chapter 5 of the Bankruptcy Code." (*Id.* at 479.) "Causes of Action" is defined by the Plan as "all claims, rights, actions, causes of action, liabilities, obligations, suits, debts, remedies, dues, sums of money, accounts, reckonings, bonds, bills, specialities, covenants, contracts, controversies, agreements, promises, variances, trespass, damages or judgments, whether known or unknown, liquidated or unliquidated, fixed or contingent, matured or unmatured, foreseen or unforseen, asserted or unasserted, arising in law, equity, or otherwise." (*Id.* at 480.) And the Plan defines

---

[2] "New Mirant" refers to the new corporate entity that came out of the Chapter 11 reorganization to serve as the parent corporation. New Mirant is the parent corporation for the plaintiff in this case. (Defs.' App. at 493.)

3

"Designated Avoidance Actions" as "Avoidance Actions that have either been commenced or are potential Avoidance Actions, as identified in Schedule 8 of the Disclosure Statement or as supplemented by the Confirmation Order." (*Id.* at 482.) While the terms "fraudulent transfer" and "fraudulent-transfer action" are not defined by the Plan, the Disclosure Statement describes "actions to avoid fraudulent transfers" as actions that may be "brought pursuant to either Section 548 of the Bankruptcy Code or applicable state law, as made applicable pursuant to Section 544 of the Bankruptcy Code." (*Id.* at 144-45.)

Schedule 8 to the Disclosure Statement is titled "Designated Avoidance Actions" and, under a column titled "Action," it lists the "Castex Fraudulent-Transfer Action," which was the above-described avoidance action. (*Id.* at 543.) Under a second column titled "Status," Schedule 8 recites that the Castex fraudulent-transfer action is stayed. (*Id.*)

The bankruptcy court confirmed the Plan in December 2005. The confirmation order provided that

> the Debtors shall transfer and assign all of the Debtors' rights under and interests in the Designated Avoidance Actions to a newly-formed special purpose subsidiary of New Mirant ("Litigation Sub"), which shall have the sole power and control over the manner in which the Designated Avoidance Actions are prosecuted, settled, or otherwise liquidated . . . .

(Defs' App. at 384.) The debtors then moved the bankruptcy court for an order transferring "all causes of action, including

4

Avoidance Actions" to New Mirant and then, "immediately after" the transfer, for New Mirant to "transfer the Designated Avoidance Actions to the Litigation Sub" created under the Plan "for the benefit of the debtors and their estates." (*Id.* at 504.)

The debtors contended that a transfer order from the bankruptcy court would "moot and avoid any disputes" that could arise with respect to "the power, authority, or ability of New Mirant or the Litigation Sub (as applicable) to manage their respective litigations as . . . intended by the Plan and the Confirmation Order." (*Id.*) The bankruptcy court granted the debtors' motion and ordered "all causes of action, including avoidance actions . . . transferred to, and . . . vested in, New Mirant . . .," and directed that "New Mirant . . . transfer the Designated Avoidance Actions to the Litigation Sub of New Mirant . . . ." (*Id.* at 510.)

Thereafter, New Mirant formed the plaintiff in this case, MC Asset Recovery, LLC ("MCAR"). (*Id.* at 512.) The "Limited Liability Company Agreement" provides that MCAR "has been designated as a representative of the debtors and their estates under Sections 1123(a)(5), (a)(7), and (b)(3)(B) of the Bankruptcy Code, and has the rights and powers of the debtors under Section 1107 of the Bankruptcy Code with respect to the Designated Avoidance Actions in their possession . . . ." (*Id.* at 515.) The agreement further recited that MCAR "was formed to prosecute, settle and/or liquidate the Designated Avoidance Actions . . . and to have sole

5

power and control over the manner in which the Designated Avoidance Actions are prosecuted, settled, or otherwise liquidated . . . ." (*Id.*)

After its formation, MCAR moved the bankruptcy court to substitute as the plaintiff in the stayed adversary proceeding against Defendants, and the bankruptcy court granted the motion. (*Id.* at 14-16.) Once substituted, MCAR filed a motion for leave to file its first amended complaint. During this time, Defendants' motion to withdraw the reference was pending in this Court. This Court granted the motion to withdraw the reference and granted MCAR's motion for leave to file its first amended complaint.

Thereafter, MCAR was permitted leave to file its second and third amended complaints. MCAR's amended complaints abandoned the avoidance claims brought under Sections 544 and 548 of the Bankruptcy Code and, instead, asserted various state-law causes of action based on the same operative facts and circumstances surrounding the series of 2001 and 2002 transactions that were the basis for the original avoidance claims.

II. Standard

A. Federal Rule of Civil Procedure 12(b)(1)

A party may seek dismissal of an action for lack of subject-matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1). The question of subject-matter jurisdiction is for the Court to

decide even if it requires the Court to make factual findings. *See Ramming v. U.S.,* 281 F.3d 158, 161 (5th Cir. 2001).

The United States Court of Appeals for the Fifth Circuit distinguishes between "facial" and "factual" attacks on the Court's subject-matter jurisdiction. *See Paterson v. Weinberger,* 644 F.2d 521, 523 (5th Cir. 1981); *Irwin v. Veterans Admin.,* 874 F.2d 1092, 1096 (5th Cir. 1989). A facial attack involves challenging the Court's subject-matter jurisdiction solely on the pleadings. *See Lawrence v. Dunbar,* 919 F.2d 1525, 1529 (11th Cir. 1990); *Paterson,* 644 F.2d at 523. Under that circumstance, the Court must accept all allegations in the complaint as true. *See Garcia v. Copenhaver, Bell & Assocs., M.D.'s, P.A.,* 104 F.3d 1256, 1261 (11th Cir. 1997); *Paterson,* 644 F.2d at 523.

A factual attack, on the other hand, involves the submission of extrinsic evidence to the complaint. *Garcia,* 104 F.3d at 1261; *Paterson,* 644 F.2d at 523. In responding to a factual attack, a plaintiff "is also required to submit facts through some evidentiary method and has the burden of proving by a preponderance of the evidence that the trial court does have subject-matter jurisdiction." *Paterson,* 644 F.2d at 523; *see also Irwin,* 874 F.2d at 1096. As long as the jurisdiction question does not implicate the merits of the plaintiff's complaint, no presumption of truth attaches to the allegations of fact contained in it, and the Court enjoys broad discretion to weigh evidence and resolve factual

7

disputes. *See Garcia,* 104 F.3d at 1261; *Williamson v. Tucker,* 645 F.2d 404, 413 (5th Cir. 1981). In the end, subject-matter jurisdiction, or the lack thereof, "may be found in any one of three instances: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the Court's resolution of disputed facts." *Ramming,* 281 F.3d at 161.

B. Standing

The parties' dispute over this Court's subject-matter jurisdiction rests on the question of whether MCAR has standing to bring its state-law claims against Defendants. The doctrine of standing is found in Article III, Section 2 of the Constitution, which limits the jurisdiction of federal courts to "cases" or "controversies." *See McConnell v. FEC,* 540 U.S. 93, 124 S. Ct. 619, 707 (2003). "One element of the 'bedrock' case-or-controversy requirement is that plaintiffs must establish that they have standing to sue." *Id.*

"Ordinarily, . . . a litigant may not merely champion the rights of another." *Audler v. CBC Innovis Inc.,* 519 F.3d 239, 248 (5th Cir. 2008)(internal quotations and citations omitted). Instead, a plaintiff must establish that he has a personal stake in the alleged dispute and that the alleged injury suffered is particularized to him. *Id.* The Bankruptcy Code, however, permits

a plan for reorganization to provide for "the settlement or adjustment of any claim or interest belonging to the debtor or to the estate" or for "the retention and enforcement by the debtor, by the trustee, or by a representative of the estate appointed for such purposes, of any such claim or interest." 11 U.S.C. § 1123(b)(1) and (2). Thus, for MCAR to establish it has standing, it must convince this Court that the Plan transferred to it the authority to prosecute this case. The Court believes it has.

III. Discussion

It is Defendants' contention that New Mirant did not transfer any of the state-law causes of action to MCAR that it now seeks to assert against Defendants. Defendants argue that New Mirant only transferred avoidance actions under sections 544 and 548 of the Bankruptcy Code to MCAR and that the state-law claims it now seeks to assert are not avoidance actions. Defendants contend that by amending its complaint and abandoning the avoidance claims under the Bankruptcy Code, MCAR "has pled itself out of court" because it does not have standing to bring the state-law causes of action since New Mirant never transferred those causes of action to MCAR. (Defs.' Br. at 18.)

On the one hand, the Plan supports Defendants' interpretation. The Plan contains a very broad definition of the term "Cause of Action." But that broad definition is confined by the later use of

9

the terms "Designated Avoidance Actions" and "Avoidance Actions." Read together, the Plan indicates that MCAR received the authority to prosecute all potential or already commenced avoidance actions arising under Chapter 5 of the Bankruptcy Code. Since the state-law claims now asserted by MCAR are not claims that arise under Chapter 5 of the Bankruptcy Code, it would seem that it has indeed "pled itself out of Court."

The Plan must, however, be read in the context of the bankruptcy litigation. The Plan and the Confirmation Order provide that New Mirant and MCAR share "a common interest in the prosecution of the Designated Avoidance Actions." (Defs.' App. at 385.) Further, the Plan, the Confirmation Order and the agreement forming MCAR provide that MCAR "shall have the sole power and control over the manner in which the Designated Avoidance Actions are prosecuted, settled, or otherwise liquidated." (*Id.* at 384.) Still more, the agreement provides that MCAR enjoys all the same rights and powers as the debtors under section 1107 of the Bankruptcy Code. And MCAR was specifically created to (1) "prosecute, settle, and/or liquidate the Designated Avoidance Actions . . . in such a manner as to maximize the proceeds therefrom"; (2) "exercise all rights and powers of a debtor-in-possession"; and (3) "exercise the powers and privileges consistent with the foregoing purposes." (*Id.* at 518.) This indicates that the debtors and the unsecured creditors intended to transfer this avoidance adversary action

10

against Defendants to MCAR and that MCAR would have complete authority as to how to prosecute that action, including the authority to amend the complaint and abandon the avoidance claims in favor of state-law claims arising out of the same facts and circumstances as the avoidance claims.  To put it another way, while the debtors and the unsecured creditors intended to transfer the avoidance adversary action against Defendants to MCAR, the language in the Plan, the Confirmation Order, and the agreement creating MCAR also suggests that the debtors and the unsecured creditors did not intend to limit MCAR's ability to effectively prosecute the action against Defendants in any way.

This interpretation is supported by the affidavit of Paul Silverstein, who served as co-counsel to the Official Committee of Unsecured Creditors ("the Committee") appointed in Mirant's Chapter 11 case to represent and act as fiduciary for the holders of nearly six billion dollars in claims against Mirant.  The Committee was actively and directly involved in the negotiations with Mirant regarding Mirant's plan for reorganization, and Silverstein was lead counsel to the Committee in the negotiations with respect to the causes of action and claims that would be prosecuted by a successor to Mirant pursuant to the Plan.  Silverstein explains that the intent of the parties (the debtors and the unsecured creditors) was that the lawsuits and claims would be asserted for

the benefit of Mirant's unsecured creditors and former shareholders:

> It was agreed between the Committee, Mirant, and other parties in interest that what were referred to as the Designated Avoidance Actions under the Plan would be transferred to a litigation subsidiary ("the Litigation Sub") for prosecution on behalf of Mirant's creditors and shareholders . . . . [I]t was always the intent and understanding of the Committee, and the intent and understanding expressed by Mirant and other parties in interest, that all Designated Avoidance Actions, including this lawsuit (then an adversary proceeding pending before the bankruptcy court), and all claims or causes of action arising out of the underlying transactions that are subject of this lawsuit, would be fully and completely transferred to the Litigation Sub and that neither Mirant nor the reorganized debtor ("New Mirant") would retain any rights in the Designated Avoidance Actions."

(Pl.'s App. at 3-4.) Silverstein's testimony thus supports the interpretation that the transfer of this avoidance adversary proceeding to MCAR in accordance with the Plan included giving MCAR the power and the right to prosecute the case in any manner it believed would maximize recovery, including amending the complaint to abandon the avoidance claims and instead assert state-law causes of action.³

---

³ Defendants object to the Silverstein affidavit calling it "nothing more than a self-serving statement of a drafter of the Plan documents." (Defs.' Reply at 8.) Defendants argue that in the event the Court finds the Plan to be ambiguous, the Court should find their interpretation reasonable and construe the Plan in their favor because "'it would be unjust to construe an ambiguous provision in favor of the party that drafted it.'" (*Id.* citing *Calcasieu-Marine Nat'l Bank v. American Employers' Ins. Co.*, 533 F.2d 290, 295 n.6 (5th Cir. 1976).) Defendants were not parties to the negotiation of the Plan, were not parties in interest, and did not participate in the bankruptcy process; thus, they have no standing to object to Silverstein's affidavit. The rule that it is unjust to construe an ambiguous provision in favor of the party who drafted it generally applies in the insurance

12

Regardless, Federal Rule of Civil Procedure 17, which provides that "an action must be prosecuted in the name of the real party in interest," also establishes a method to cure standing defects:

> The court may not dismiss an action for failure to prosecute in the name of the real party in interest until, after an objection, a reasonable time has been allowed for the real party in interest to ratify, join, or to be substituted into the action. After ratification, joinder, or substitution, the action proceeds as if it had been originally commenced by the real party in interest.

FED. R. CIV. P. 17(a)(3). The Advisory Committee Notes indicate that this provision "is simply in the interest of justice" and is designed "to protect the defendant against a subsequent action by the party actually entitled to recover, and to insure . . . res judicata." Fed. R. Civ. P. 17(a)(3) advisory committee's note, (1966 Amendment). This provision in Rule 17(a) is applicable when "the plaintiff brought the action in [his] own name as the result of an understandable mistake . . . ." *Wieburg v. GTE S.W., Inc.*, 272 F.3d 302, 308 (5th Cir. 2001).

As mentioned above, this action originally began as an avoidance adversary proceeding in the bankruptcy court initiated by Old Mirant. No one contends that Old Mirant did not have standing to bring the action. That action was subsequently transferred to

---

context where a provision to a contract was drafted by the insurer and is sought to be enforced against the insured. *See Calcasieu-Marine Nat'l Bank,* 533 F.2d at 295. Defendants are not parties to the Plan nor are they intended beneficiaries of the Plan; therefore, they lack standing to invoke this rule of contractual interpretation.

MCAR, and no one contends MCAR did not have standing to prosecute the avoidance action. Assuming, however, that the court is incorrect and MCAR did not have the authority to substitute state-law claims for the avoidance claims, it is clear that MCAR's abandoning the avoidance claims in favor of asserting state-law claims was a result of an understandable mistake regarding what in fact was transferred to it to prosecute. Because dismissal here could mean dismissal with prejudice due to the statute of limitations, and in light of the fact that Defendants would suffer no prejudice, the Court concludes that MCAR's alternative request for relief should be granted, so that New Mirant has an opportunity to ratify, join, or substitute in as a plaintiff. *See Wieburg,* 272 F.3d at 309 (agreeing with district court that original plaintiff had no standing but reversing district court's dismissal as abuse of discretion because it failed to consider alternatives of allowing real party in interest to ratify, join, or substitute.

IV. Conclusion.

In light of the foregoing, the Court DENIES Defendants' motion to dismiss under Rule 12(b)(1) for lack of subject-matter jurisdiction. MCAR shall have ten government working days from the date of this order in which to submit proof to the Court that New Mirant has ratified MCAR's amended suit against Defendants and has transferred to MCAR all rights and authority to pursue any and all

14

claims arising out of the series of transactions between Old Mirant and Defendants in 2001 and 2002.  Alternatively, New Mirant shall have ten government working days from the date of this order to either join in this suit or seek to be substituted as the real party in interest.

SIGNED July 31, 2008.

_Terry R. Means_
TERRY R. MEANS
UNITED STATES DISTRICT JUDGE