IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

MC ASSET RECOVERY, LLC          §
                                §
VS.                             §   CIVIL ACTION 4:07-CV-076-Y
                                §
CASTEX ENERGY, INC., ET AL      §

OPINION AND ORDER DENYING MOTION FOR STAY
AND TO COMPEL ARBITRATION

Pending before the Court is Defendants' Motion to Dismiss or Alternatively, to Stay Pending Arbitration (doc. #126).  After review of the motion, the Court concludes that Defendants have waived their right to arbitration.  As a result, their motion will be denied.


I.  Background

The background of this case is set out in detail in the Court's order partially granting and partially denying Defendants' motion to dismiss (doc. #123).  It suffices for the purpose of resolving the current motion to provide a more brief background.  In 2001 and 2002, entities related to the current plaintiff, MC Asset Recovery, LLC ("MCAR"), entered into two transactions for the purchase of certain closely held stock, mineral rights, oil and gas leases, and fee lands located in various parishes throughout southern Louisiana.[1]  Both transactions took the form of purchase-and-sale agreements ("PSA").

---

[1]  The items listed are collectively referred to as "the Property."  The oil-and-gas leases and fee land are together referred to as "the Assets."

In conjunction with the 2001 PSA, MCAR's predecessor-in-interest, Mirant Americas Production Company ("MAPCO"), entered into a "Management Services Agreement" ("MSA") with Defendants.  As part of the MSA Defendants made various representations, including the promise to promptly furnish MAPCO with information relating to matters that "materially and adversely" affect the Assets and to "advise and counsel MAPCO" on "proposals to sell or otherwise dispose of some or all of the Assets."  An "Area of Mutual Interest Agreement" ("AMI Agreement") was also promulgated in conjunction with the 2001 PSA.  The AMI Agreement provided MAPCO and Defendants a preferential right to purchase each other's respective interest in the Assets and required any party desiring to transfer its share to provide notice to the other party.  The notice was to provide various details of the proposed transfer and the notified party then had ten days in which to exercise its preferential right to purchase.

In the summer of 2002, MAPCO decided to sell its interest in the Assets.  In an effort to fully capture the value of its interest, MAPCO proposed to defendant Castex Energy, Inc.[2] ("Castex")'s president, John Stoika, a joint sale.  Stoika declined the offer to join in a sale and told MAPCO that Defendants presently had no interest in selling since commodity prices were low and many of the

---

[2] Defendant Castex Energy, Incorporated, is the general partner of defendants Castex 1995, L.P., Castex 1996, L.P., and LaTerre Company, LTD, and all are controlled by the same principals.  Unless indicated otherwise, "Defendants" refers to all of the defendants.

2

Assets were still underdeveloped.  MAPCO then decided to proceed with the sale of its seventy-five percent interest alone.

Not long afterward, MAPCO proposed Defendants' reacquisition of MAPCO's interest in the Property.  Under the 2002 PSA MAPCO agreed to sell its interests in the Property back to Defendants for $134,633,939.  As part of the 2002 PSA Defendants warranted that they were not in breach of the MSA or AMI Agreement.

MAPCO and Defendants agreed on an amendment to the 2002 PSA that extended the agreement's November 2002 closing deadline. Defendants also convinced MAPCO to include other provisions in the amendment, including MAPCO's acknowledgment that Defendants had been and were then exploring various "opportunities" regarding the Property.  The amendment also waived any claims of conflicts of interest by MAPCO as well as its preferential rights of purchase. Both the 2002 PSA and the amendment provided a disclaimer that "no party has relied upon any other party or its counsel or advisers with respect to the meaning or effect of any such agreement or instrument." Defendants explained that the amendment was necessary because Defendants were considering bringing in additional parties to participate on their side of the transaction.

The deal closed on December 11.  At the closing, Defendants executed a "Buyer's Certificate," which again certified that they had not breached the MSA or the AMI Agreement as represented in the 2002 PSA.  The parties also executed agreements that terminated

MAPCO's and Defendants' rights and obligations under the MSA and AMI Agreement arising after July 31, 2002.

Approximately six days after the closing, Defendants sold 100 percent of the Assets to Apache Corporation ("Apache") for $260,000,000. Filings with the Securities and Exchange Commission reveal that Apache's acquisition of the Assets from Defendants was effective December 1, 2002, or ten days before the closing of the 2002 PSA. MCAR (again, MAPCO's successor) complains that Defendants never disclosed to MAPCO the potential sale of the Property to Apache. MCAR asserts that, had MAPCO known about the deal between Defendants and Apache, it would not have sold its interest to Defendants, and certainly not for the price negotiated. MCAR contends that Defendants' failure to inform MAPCO of Apache's interest and eventual offer was in violation of the MSA, the AMI Agreement, and the 2002 PSA, and that, thus, they breached their contract with MAPCO and committed civil fraud.

These allegations were first raised during Mirant Corporation ("Mirant")'s chapter 11 bankruptcy proceedings. Mirant, MCAR's predecessor-in-interest, filed a voluntary petition on June 1, 2003. (See doc. #1 in Bankr. No. 03-46590-dml11.) MCAR was formed to pursue claims on behalf of Mirant and, on June 13, 2005, an adversarial complaint was filed. (See doc. #1 in Bankr. Adversary No. 05-04139-dml.) The complaint seeks to void the 2001 and 2002 PSAs as fraudulent transfers. Defendants' motion to withdraw reference

4

was granted on March 16, 2007, (doc. #7), and the case has proceeded before this Court since.

## II.  Discussion

### A.  Legal Standards

Sections 3 and 4 of the Federal Arbitration Act ("FAA") "provide parallel devices for enforcing an arbitration agreement." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 22 (1983). Under § 4 a party may seek an order compelling arbitration of claims that are subject to a written arbitration agreement. *See* 9 U.S.C. § 4.  Section 3 requires a court, "upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration" to stay the judicial proceedings in favor of arbitration. *See* 9 U.S.C. § 3.  If all of the issues raised in an action are arbitrable, however, the proper course is to dismiss the action. *See Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161, 1164 (5th Cir. 1992).

When deciding a motion to compel arbitration, courts within this circuit employ a two-step inquiry. *Primerica Life Ins. Co. v. Brown*, 304 F.3d 469, 471 (5th Cir. 2002).  First, a court must determine whether the parties have agreed to arbitrate their dispute. *Id.*  This involves "two considerations: (1) whether there is a valid agreement to arbitrate between the parties; and (2) whether the dispute in question falls within the scope of that agreement."

*Webb v. Investacorp, Inc.*, 89 F.3d 252, 258 (5th Cir. 1996).  A Court next determines "whether constraints external to the parties' agreement foreclose the arbitration of those claims." *See Primerica Life Ins. Co.*, 304 F.3d at 471.  Being a contractual right, the right to arbitrate is subject to waiver.  *See Miller Brewing Co. v. Fort Worth Distrib. Co.*, 781 F.2d 494, 497 (5th Cir. 1986).

But there is a strong policy in favor of arbitration under the FAA. *See Neal v. Hardee's Food Sys., Inc.*, 918 F.2d 34, 37 (5th Cir. 1990).  Courts within the Fifth Circuit "indulge a presumption against finding waiver.  A party asserting waiver thus bears a heavy burden of proof in its quest to show that an opponent has waived a contractual right to arbitrate." *Walker v. J.C. Bradford & Co.*, 938 F.2d 575, 577 (5th Cir. 1991).

"When a timely demand for arbitration is made, the burden of proving waiver falls even more heavily on the shoulders of the party seeking to prove waiver." *Republic Ins. Co. v. Paico Receivables, LLC*, 383 F.3d 341, 346-47 (5th Cir. 2004).  Defendants maintain that they have reserved their right to arbitrate at all relevant stages by noting the right in their initial answer, motion for protective order, joint status report, and all of their dispositive pleadings. (Def. Mtn. Br. at 2, n.3.)  But as argued by MCAR, it is not enough merely to express a potential intention to arbitrate.  *See Lomas v. Travelers Prop. Cas. Corp. (In re Citigroup, Inc. Cap. Accum. Plan Litig.)*, 376 F.3d 23, 27 (1st Cir. 2004); *see also Keytrade USA,*

*Inc. v. Ain Temouchent M/V*, 404 F.3d 891, 897 (5th Cir. 2005) (imposing heavier burden because movant "specifically called upon the district court to refer the case to arbitration" in its answer); *SW Indus. Import & Export, Inc. v. Wilmod Co., Inc.*, 524 F.2d 468, 470 (5th Cir. 1975) (stating "timely *demand* for arbitration at or before the commencement of judicial proceedings" imposes a heavier burden) (emphasis added); *S. Broward Hosp. Dist. v. Medquist, Inc.*, 258 Fed. Appx. 466, 468 (3d Cir. Dec. 13, 2007) (defendant's prior expression of preference to arbitrate did not justify delay in demanding arbitration). A party must make a demand that arbitrable claims be sent to arbitration. Defendants did not do this until the current motion, on October 6, 2008, over 27 months after the initial complaint against Defendants was filed and over 21 months after MCAR was substituted in as a plaintiff in the related bankruptcy proceedings.

Defendants contend that it was not clear that the claims from the original adversary complaint were arbitrable. MCAR's original complaint in the adversary complained of the transactions underlying its current causes of action. MCAR sought to avoid the obligations created by the 2001 and 2002 PSAs, arguing that these transactions were fraudulent transfers under the bankruptcy code because, inter alia, MCAR's predecessors-in-interest received less than reasonably equivalent value. (See doc. #1 in Bankr. Adversary No. 05-04139-dml.) But even if MCAR's fraudulent-transfer claims were not

arbitrable, the original complaint put Defendants on notice that MCAR was relying on facts that could give rise to arbitrable claims. And MCAR's first amended complaint, filed March 15, 2007, alleges state-law claims that clearly implicate the arbitration agreement. Consequently, MCAR is not subject to the additional burden that arises when the right to arbitrate has been asserted early in the proceedings.

Even so, there is a presumption against finding a waiver of the right to arbitrate. *Lawrence v. Comprehensive Bus. Servs. Co.*, 833 F.2d 1159, 1164 (5th Cir. 1987). "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract itself or an allegation of waiver, delay, or a like defense to arbitrability." *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24-25.

A party may be determined to have waived its right to arbitrate when it has "substantially invoked the judicial process to the detriment or prejudice of the other party." *Republic Ins. Co.*, 383 F.3d at 344. To waive its right to arbitrate a "party must, at the very least, engage in some overt act in court that evinces a desire to resolve the arbitrable dispute through litigation rather than arbitration." *Id.* at 344-345. As for whether a party has substan-tially invoked the judicial process, the FAA provides no definition of "waiver." *Youngs v. Haugh*, No. 4:08-CV-528-Y, 2009 U.S. Dist. LEXIS 21853, at *8 (N.D. Tex. March 18, 2009). A court must,

therefore, determine whether waiver has occurred based on the peculiar facts of each case. *See id.; see also Tenneco Resins, Inc. v. Davy Int'l, AG*, 770 F.2d 416, 420 (5th Cir. 1985). Substantial invocation may be found based on various acts constituting litigation conduct including the filing of dispositive motions and extensive participation in discovery. *See Price v. Drexel Burnham Lambert, Inc.*, 791 F.2d 1156, 1159 (5th Cir. 1986); *cf. Tenneco Resins, Inc.,* 770 F.2d at 420-21 (collecting examples of acts that do not constitute substantial invocation of the judicial process).

Invocation of the judicial process alone is not enough to waive the right to arbitrate. The litigation conduct of the party asserting the right to arbitrate must have prejudiced the opposing party. *See Republic Ins. Co.*, 383 F.3d at 346. "[P]rejudice . . . refers to the inherent unfairness--in terms of delay, expense, or damage to a party's legal position--that occurs when the party's opponent forces it to litigate an issue and later seeks to arbitrate that same issue." *Subway Equip. Leasing Corp. v. Forte*, 169 F.3d 324, 327 (5th Cir. 1999) (alterations in *Subway Equip.*). The United States Court of Appeals for the Fifth Circuit has identified three factors that bear on the prejudice analysis. They are (1) the amount of pretrial activity related to arbitrable claims; (2) the time and expense incurred by the party opposing arbitration in defending against the litigation efforts of the party attempting to compel arbitration; and (3) the delay in asserting the right to

arbitrate.  *Id.*


   B.   Analysis

   There does not appear to be any dispute in this case over the existence or validity of the agreement to arbitrate or whether the claims at issue fall within the scope of such agreement.  In their motion, Defendants argue that the 2002 PSA contained an arbitration clause.  A review of the 2002 PSA and its November 2002 amendment confirms the existence of an agreement to arbitrate.  And as to whether MCAR's claims are subject to the agreement, Defendants note that the clause requires arbitration of "any dispute, controversy or claim arising out of or in relation to or in connection with" the 2002 PSA including "without limitation any dispute as to the con-struction, validity, interpretation, enforceability or breach of this Agreement."  (Mtn. Br. at 5; Mtn Appx., Ex. A at 56.)  Accord-ing to Defendants, all of MCAR's claims will require interpretation and application of the 2002 PSA.  MCAR concedes as much in its briefing. (Resp. Br. at 2, n.6.)  After review, the Court concludes that a valid agreement to arbitrate exists and that the allegations in MCAR's complaint fall within the scope of that agreement.  Thus, the issue become whether, as argued by MCAR, Defendants waived their right to arbitrate.

   MCAR insists that Defendants have waived the right to arbitrate by engaging in significant litigation conduct and delaying for

twenty-seven months since the adversary was filed and eighteen
months since the first amended complaint was filed before demanding
arbitration.  Defendants respond that delay, even when coupled with
"substantial steps toward litigation of the arbitral dispute" is not
enough to waive the right to arbitrate.  (Reply Br. at 2 (citing
*Gulf Guar. Life Ins. Co. v. Conn. Gen. Life Ins. Co.*, 304 F.3d 476,
484 (5th Cir. 2002).)  All but one of the cases Defendants rely on
in this regard involved delay coupled with only limited participa-
tion in discovery.  *See Tenneco Resins, Inc.*, 770 F.2d at 420-21
(concluding eight month delay, service of interrogatories and
request for production, and filing of motions for protective order
and to extend the discovery period was not a waiver); *see also
Walker v. J.C. Bradford & Co.*, 938 F.2d 575, 576-77 (5th Cir. 1991)
(no waiver based on thirteen-month delay despite service of inter-
rogatories and requests for production and attendance of pretrial
conference); *Gen. Guar. Ins. Co. v. New Orleans Gen. Agency, Inc.*,
427 F.2d 924, 928-29 (5th Cir. 1970) (no waiver when moving party
filed answer and counterclaims, attempted to implead third parties,
and allowed the taking of two depositions before demanding arbitra-
tion). This sort of activity *toward* litigation differs from the
instant case, which involves actual litigation in the form of four
dispositive motions, one of which was ruled upon and resulted in a
partial dismissal of MCAR's case.

Defendants also rely on *Keytrade U.S.A., Inc. v. Ain Temouchnet*

*M/V*.   In *Keytrade* the Fifth Circuit concluded that the movant's participation in discovery along with its filing of a motion for summary judgment was not a sufficient invocation of the judicial process to waive the right to arbitrate.   *Keytrade U.S.A., Inc. v. Ain Temouchnet M/V*, 404 F.3d 891, 897 (5th Cir. 2005).   The Court observed that the plaintiff had offered "no legal authority for why a motion for summary judgment, filed from a defensive posture, can be characterized as an invocation of judicial process."   *Id.*   The court further explains that even if such a motion is an invocation of the judicial process, the movant had filed a motion to compel arbitration in the alternative to its summary-judgment motion.   *Id.* at 898.   Other cases similarly state that actions taken from a defensive standpoint do not constitute waiver.   *See Gulf Guaranty Life Ins. Co. v. Conn. Gen. Life Ins. Co.*, 304 F.3d 476, 485 (5th Cir. 2002).

But the Fifth Circuit has at other times concluded that the filing of dispositive motions, along with other actions, is sufficient to waive the right to arbitrate.   For instance, in *Price v. Drexel Burnham Lambert, Inc.*, the Fifth Circuit concluded that the defendant waived its right to arbitrate based on, inter alia, the filing of a motion to dismiss and a motion for summary judgment. *See Price v. Drexel Burnham Lambert, Inc.*, 791 F.2d 1156, 1159-62 (5th Cir. 1986); *see also Unity Communs. Corp. v. Cingular Wireless*, 256 Fed. Appx. 679, 681 (5th Cir. Dec. 3, 2007) (affirming district

12

court's conclusion that waiver had occurred based on the movant's filing of motions to dismiss, for summary judgment, and to extend a deadline, participation in discovery, and the taking of an interlocutory appeal); *E.C. Ernst, Inc. v. Manhattan Constr. Co.*, 551 F.2d 1026, 1040-41 (5th Cir. 1977) (finding participation in discovery, presentation of cross-claims, and filing various motions, including a motion to dismiss, waived the right to arbitrate).

And Defendants have not merely filed a motion to dismiss as a perfunctory defensive measure. *See Rush v. Oppenheimber & Co.*, 779 F.2d 885, 888 (2d Cir. 1985) (cited with approval in *Price*, 791 F.2d at 1162) (explaining that motion to dismiss filed in response to "an intricate complaint . . . setting forth numerous claims outside the scope of" the arbitration clause does not waive the right to arbitrate).  Instead, Defendants have filed one motion to dismiss for lack of subject-matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) and three motions to dismiss under Federal Rules of Civil Procedure 9 and 12(b)(6).

As for the motion to dismiss for lack of jurisdiction, Defendants argued that the bankruptcy court's order approving the plan for reorganizing MCAR's predecessor-in-interest did not properly transfer the causes of action to MCAR.  Defendants argued that, as a result, MCAR lacks standing under Article III's "case or controversy" requirement.  *See Gladstone Realtors v. Village of Bellwood*, 441 U.S. 91, 99 (1979) (noting Article III of the Constitution

limits subject-matter jurisdiction to cases in which the plaintiff has personally suffered some injury as a result of the defendant's putatively illegal conduct).   Generally, a ruling on a motion to dismiss for lack of jurisdiction is not considered an adjudication on the merits.   *See Blanchard 1986, Ltd. v. Park Plantation, LLC*, 553 F.3d 405, 409 n.15 (5th Cir. 2008).   But such a ruling does have preclusive effect as to issues determined in ruling on the jurisdictional question.   *See Baris v. Sulpicio Lines, Inc.*, 74 F.3d 567, 571 (5th Cir. 1996); *see also* 18A Charles A. Wright, Arthur R. Miller, & Edward H. Cooper, Federal Practice and Procedure § 4436 & n.2 (2d ed. 2002)(explaining that a dismissal for lack of jurisdiction is "effective to preclude relitigation of the precise issue of jurisdiction . . . that led to the initial dismissal").   In this case, a ruling that MCAR lacks standing because the reorganization plan did not transfer the causes of actions to MCAR would prevent MCAR from later attempting to bring such claims and would have effectively ended this litigation.

Defendants' motions to dismiss for failure to state a claim are even more indicative of an invocation of the judicial process. Defendants maintain that the fact that they have filed three motions to dismiss for failure to state a claim should not be held against them as they were merely responding to MCAR's amended complaints. But Defendants' own arguments work against them.   Defendants' attempts at "reserving" their right to arbitrate in their answer and

14

various other filings, including their motions to dismiss, demon-
strate that they have been fully aware of their right to arbitrate
since the outset of this litigation.   Use of the federal court
system to advance one's legal position only to seek to finish the
suit in arbitration when the suit could have proceeded to arbitra-
tion immediately is not viewed with favor in this circuit.   *See*
*Walker*, 938 F.2d at 577.

Defendants' actions are particularly troubling given that,
contrary to the sort of perfunctory dismissal motions that do not
justify a finding of waiver, Defendants' motions to dismiss relate
exclusively to claims that they now argue are subject to arbitra-
tion.   *Cf. Rush*, 779 F.2d at 888 (explaining motion to dismiss
intricate complaint with numerous claims outside the scope of the
arbitration agreement does not waive the right to arbitrate).
Indeed, as argued by Defendants, the arbitration clause at issue is
extremely broad, encompassing "any dispute, controversy or claim
arising out of or in relation to or in connection with" the 2002
PSA.   (Mtn. Appx. Ex. A, p. 56.)   *Cf.   Complaint of Hornbeck Off-*
*shore (1984) Corp.*, 981 F.2d 752, 755 (5th Cir. 1993) (observing
that it is difficult to imagine a broader arbitration clause than
"any dispute").   But despite the fact that MCAR's claims are clearly
arbitrable, rather than respond to any of MCAR's actions with a
motion to compel arbitration or at least a demand to arbitrate in
the alternative to the motions to dismiss, Defendants have chosen

15

to proceed before this Court. *Cf. Lewallen v. Green Tree Servicing, LLC*, 487 F.3d 1085, 1091 (8th Cir. 2007) (noting the movant's repeated failure to assert its right to arbitrate in response to actions by the opposing party in finding the movant had waived its right to arbitrate).

And Defendants saw their last motion to dismiss all the way to a ruling.  This distinguishes the current case from cases cited by Defendants that note that the mere filing of a defensive motion does not waive the right to arbitrate.  *Cf. Keytrade U.S.A., Inc.,* 404 F.3d at 897 (noting the plaintiff's failure to cite authority that the filing of a motion for summary judgment invokes the judicial process); *see Price*, 791 F.2d at 1162 (stating a motion for summary judgment "could not have caused anything but substantial prejudice"); *see also Khan v. Parsons Global Servs., Ltd*, 521 F.3d 421, 426 (D.C. Cir. 2008) (noting pursuit of a motion for summary judgment to a ruling constitutes a "demand for resolution on the merits").  And Defendants' latest motion to dismiss for failure to state a claim did not simply seek dismissal;  their most recent motion sought dismissal of MCAR's claims with prejudice based in large part on the affirmative defenses of waiver and release.

Defendants' use of an affirmative defense demonstrates a desire to resolve this case judicially.  An affirmative defense is in the nature of confession and avoidance; that is, it "admit[s] the initial sufficiency and completeness of the claim while asserting

other grounds for avoiding the normal consequences of that conces-
sion." *Pan Eastern Exploration Co. v. Hufo Oils*, 855 F.2d 1106,
1125-26 (5th Cir. 1988).  By seeking to prove their own allegations
before demanding arbitration, rather than simply denying MCAR's
allegations Defendants have engaged the judicial process. *Cf. Gen.
Guaranty Ins. Co. v. New Orleans Gen. Agency, Inc.*, 427 F.2d 924,
929 & n.6 (5th Cir. 1970) (characterizing cases in which the defen-
dant filed a counterclaim before raising the demand for arbitration
"as defendant's [i]rrevocably [locking] litigious horns by filing
a counterclaim").

Most indicative of an invocation of the judicial process is
Defendants' attempt to secure a dismissal of MCAR's claims with
prejudice.  The Court has ruled upon Defendants' third motion to
dismiss and dismissed one of MCAR's claims with prejudice.  Securing
a ruling on the merits of a claim is inconsistent with a desire to
arbitrate.  *See Khan*, 521 F.3d at 428 (stating a party who files a
motion for summary judgment "takes the risk" that the court will
rule on the merits of the plaintiff's claims, thereby precluding the
defendant from seeking arbitration subsequently"); *Lewallen v. Green
Tree Servicing, L.L.C.*, 487 F.3d 1085 (8th Cir. 2007) (party who
sought to have the court "dispose of [plaintiff's] claim on the
merits" by way of a motion to dismiss acted inconsistently with the
right to arbitrate); *St. Mary's Med. Ctr., Inc.*, 969 F.2d at 589
("Submitting a case to the district court for decision [by way of

17

a motion to dismiss or, alternatively, for summary judgment] is not consistent with a desire to arbitrate."); *cf. Subway Equip. Leasing Corp.*, 169 F.3d at 328 (a party invokes the judicial process "to the extent it litigates a specific claim it subsequently seeks to arbitrate.").  By seeking a dismissal of MCAR's claims by three separate motions under Rules 9 and 12(b)(6), Defendants persisted in seeking a ruling on the merits.  *See* FED. R. CIV. P. 41(b) (effect of involuntary dismissal); *Nowak v. Ironworkers Local 6 Pension Fund*, 81 F.3d 1182, 1188 (2d Cir. 1996) ("[A] dismissal under Rule 12(b)(6) is a dismissal on the merits of the action . . . .").  And by attempting to secure a dismissal with prejudice, Defendants sought a decision on the merits that would bar MCAR from further pursuing its claims.  *See Mahone v. Addicks Utility Dist.*, 836 F.2d 921, 940 (5th Cir. 1988) ("A dismissal with prejudice for failure to state a claim is a decision on the merits and essentially ends the plaintiff's lawsuit.").

Defendants' motions to dismiss were not their only litigation conduct.  Courts also look to other acts by the party seeking to compel arbitration.  The litigation before this Court was begun by Defendants' motion to withdraw reference.  Similar to their other filings, Defendants referred to their right to arbitrate in a footnote.  (Doc. #2 at 5, n.3.)  Rather than invoke this right, Defendants argued that the reference had to be withdrawn so they could exercise their right to trial by jury before an Article III

court.   And Defendants demanded a jury in answering MCAR's com-
plaint.   Since the withdrawal of the reference, Defendants have
filed a second answer, have filed two joint status reports and
discovery plans, and have participated in a conference under FED.
R. CIV. P. 26(f).

Courts also look to the extent to which the party seeking to
compel arbitration has participated in discovery.   To this point,
MCAR's initial disclosures under FED. R. CIV. P. 26 are the only
discovery that has been conducted in this case.   But the lack of
discovery is the result of Defendants' litigation conduct.

On June 13, 2007, the Court entered an initial scheduling
order.   Defendants responded by filing a motion for protective order
(doc. #44) in which they sought a stay of discovery pending a
decision on their motion to dismiss.   Indeed, Defendants, who
clearly could have sought arbitration of MCAR's current claims
immediately and not have engaged in over a year and half of motion
practice seeking the dismissal of such claims, argued that a stay
of discovery was necessary to prevent the parties and this Court
"from needless spending of time, money, and scarce judicial re-
sources . . . ."   (Doc. #44 at 1.)   Defendants also filed a motion
for relief from the scheduling order, this time seeking relief from
the requirement that the parties make initial disclosures under FED.
R. CIV. P. 26 (doc. #68).   Defendants then filed a motion for an
expedited ruling on the motion for relief (doc. #70).   And when MCAR

19

sought limited relief from the protective order to conduct a deposi-
tion, Defendants strenuously objected (doc. #101).

Defendants complain that a conclusion that they have engaged
in substantial litigation conduct contradicts various cases that
allow for extensive participation in discovery without waiving the
right to arbitrate.  *Cf. Price*, 791 F.2d at 1159 (finding waiver
based on, inter alia, extensive discovery).  They assert that
because discovery has not been conducted in this case there has been
no waiver.  But although the degree of participation in discovery
is a factor to be considered, the overarching inquiry is the degree
to which the party seeking to compel arbitration has engaged in acts
that demonstrate a desire to resolve the claims judicially rather
than through arbitration.  *See id.* at 1158 (stating the test for
waiver is whether "the party seeking arbitration [has] substantially
invoke[d] the judicial process to the detriment of prejudice of the
other party").  Thus, while Defendants have not engaged in signifi-
cant discovery activity in this case, this is only because of their
significant motion-practice efforts to stay discovery.  In light of
these efforts, and Defendants' other acts during the pendency of
this case, the Court concludes that Defendants have substantially
invoked the judicial process.

Next, the Court turns to the issue of whether MCAR has suffered
the sort of prejudice that supports a finding of waiver. The Court
must evaluate the amount of pretrial activity related to arbitrable

claims; the time and expense incurred by the party opposing arbitration in defending against the litigation efforts of the party attempting to compel arbitration; and the delay in asserting the right to arbitrate. *Subway Equip. Leasing Corp.*, 169 F.3d at 327.

In terms of pretrial activity, time, and expense, Defendants point out that there has been no discovery in this case and, therefore, MCAR has incurred no costs associated with discovery. But as just discussed, although discovery has not been conducted in this case there has been significant litigation regarding discovery issues. MCAR certainly incurred costs and fees in pursuing these issues.

And MCAR has also incurred significant legal fees regarding the dispositive motions filed by Defendants. In its response, MCAR states that it has incurred over $260,000 in legal fees in responding to Defendants' discovery motions and motions to dismiss. The attorneys' fees and costs related to defending against multiple dispositive motions are the sort of prejudice that justify a finding of waiver. *See Price*, 791 F.2d at 1160.

The Fifth Circuit's prejudice analysis also calls for an evaluation of "damage to a party's legal position." *See Subway Equip. Leasing Corp.*, 169 F.3d at 327. As noted above, Defendants have filed various motions to obtain stays of discovery in this case while at the same time filing four dispositive motions. Thus, while Defendants have sought a ruling that would bring this case to an end

21

they have sought to prevent MCAR from advancing its claims in any way.  The last of these motions sought dismissal of MCAR's claims with prejudice and such a dismissal was granted as to one claim. Clearly Defendants' efforts have resulted in damage to MCAR's legal position.

Underlying all of this is Defendants' unexplained delay of over 18 months in seeking to compel arbitration after MCAR filed its first amended complaint.  Defendants have from the outset attempted to "reserve" their right to arbitrate by referring to it in footnotes in their filings.  But despite being aware of their right to arbitrate since the inception of this case, Defendants have through motion practice invoked this Court's authority to rule on the merits of MCAR's claims, all the while frustrating MCAR's attempts at advancing those claims.  This sort of delay wastes judicial resources, works to the disadvantage of the opposing party, *see Wade*, 938 F.2d at 577, and, in light of the other circumstances already discussed, is inconsistent with a desire to resolve this dispute through arbitration.

Ultimately, this case appears to involve the sort of "tactical" delay in demanding arbitration that the Fifth Circuit and other courts have decried.  *See Walker*, 938 F.2d at 577 (stating that the decision to arbitrate is best made at the onset of the case and voicing disapproval regarding a delayed attempt to compel arbitration); *see also St. Mary's Med. Ctr., Inc.*, 969 F.2d at 589  ("A

party may not normally submit a claim for resolution in one forum and then, when it is disappointed with the result in that forum, seek another forum."); *S. Broward Hosp. Dist. MedQuist, Inc.*, 516 F. Supp. 2d 370, 383 (D.N.J. 2007) (concluding that a defendant's "tactical decision to defer moving to compel arbitration" in order to "avail[] itself of the jurisdiction of the federal courts . . . [to] twice attempt[] to test the sufficiency of [the] [p]laintiff's pleadings" had waived the right to arbitrate).  A party may not "purposefully and unjustifiably . . . manipulate the exercise of its arbitral rights simply to gain an unfair tactical advantage over the opposing party." *Tyco Int'l (U.S.) Ltd. v. Swartz (In re Tyco Int'l Ltd. Sec. Litig.)*, 422 F.3d 41, 47 n.5 (1st Cir. 2005).  Defendants repeatedly challenged the merits of MCAR's claims and engaged in other litigation conduct before this Court, rather than demand arbitration.  Less than two weeks after the Court ruled on Defendants' last motion to dismiss, Defendants filed their motion to compel arbitration.  The Court does not view this timing as mere coincidence, but instead takes it as further evidence that Defendants made the tactical decision to resolve as much of this case as possible before this Court before demanding arbitration.

III.  Conclusion

Accordingly, the Court concludes that Defendants have substantially invoked the judicial process causing prejudice to MCAR and

have thereby waived their right to arbitrate.   Accordingly, Defen-
dants' motion to stay or dismiss this case in favor of arbitration
is DENIED.

SIGNED April 3, 2009.

_____
TERRY R. MEANS
UNITED STATES DISTRICT JUDGE

TRM/jar

24